UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

YOLANDA HERRERA,          )
          Petitioner     )     CIVIL ACTION NO. 05-10441-MLW
                         )
     v.                  )
                         )
UNITED STATES OF AMERICA, )
          Respondent     )
                         )

**Government's Memorandum In Opposition To
Petitioner's Motion To Vacate Sentence
Pursuant To 28 U.S.C. § 2255**

**Introduction**

The United States of America, by Michael J. Sullivan, United States Attorney, and Michael J. Pelgro, Assistant U.S. Attorney, hereby files this memorandum in opposition to the petitioner's motion to vacate her sentence pursuant to 28 U.S.C. § 2255. As set forth more fully below, the petitioner's motion should be dismissed without an evidentiary hearing for three separate reasons. First, the petitioner has made only conclusory allegations and has failed to allege any specific facts, or to cite any case law, in support of her conclusions. Second, the petitioner's claim of ineffective assistance of counsel at sentencing is conclusively refuted by the record in the criminal case, which establishes that the petitioner unequivocally stated to the Court at the sentencing hearing that she was satisfied with her attorney's representation and that she agreed with the positions he was taking at the sentencing hearing. Third, the petitioner's claim under United States v. Booker, 125 S.Ct. 738

(2005), is unavailing since her criminal case was final well before <u>Booker</u> was decided and the First Circuit and every other circuit has held that <u>Booker</u> is not retroactively applicable in § 2255 proceedings.

### Facts And Procedural Background[1]

Petitioner Yolanda Herrera, a/k/a "Isabel Jimenez" ("Herrera") and 18 co-defendants were charged in a federal indictment with participating in a conspiracy to distribute heroin from at least in or about January 1999 to in or about February 2001 in Boston and elsewhere. [DE 1 (indictment); DE 120 (superseding indictment)].[2]  The conspiracy count, Count One, contained an allegation that the conspiracy involved at least one kilogram of heroin and that 21 U.S.C. § 841(b)(1)(A)(i) (maximum sentence of life imprisonment) was applicable.

The original indictment was returned on February 8, 2001 and it was unsealed on February 23, 2001 when Herrera and others were

_____

[1]The facts and procedural background are taken from the record in the underlying criminal case, Criminal No. 01-10056-MLW.  Thus, [DE] refers to a docket entry while [PSR] refers to the Presentence Report prepared by the Probation Department.  The transcripts of the evidentiary sentencing and other hearings conducted by the Court are referred to by the date of the transcript, followed by the page number.

[2]The co-defendants included Hector Bienvenido Arias, Herrera's "common-law" husband and the father of her four children, and Hector Alexander Arias, a/k/a "Andy," Herrera's adult son.  Herrera's "common-law" husband has filed a motion to vacate his sentence pursuant to 28 U.S.C. §2255, Civil Action No. 05-10684-MLW.

arrested by the Drug Enforcement Administration ("DEA"). [DE 3, 6, 28]. Herrera was represented throughout the criminal case by retained counsel, Attorney James Budreau ("Attorney Budreau"), who filed his notice of appearance on March 7, 2001. [DE 21]. Hererra was ordered detained throughout the criminal case. [DE 62-63, 121].

On June 4, 2002, Herrera pleaded guilty to Count One pursuant to a written plea agreement with the government. [DE 224, 244, 271]. In the plea agreement, the parties disagreed as to the amount of heroin attributable to Herrera, her role in the offense conduct, and the applicability of an obstruction-of-justice enhancement. The government asserted that Herrera was responsible for 1-3 kilograms of heroin, that her Base Offense Level ("BOL") was 32, that she deserved a three-level role enhancement as a manager or supervisor of criminal activity involving at least five participants, and that she deserved a two-level, obstruction-of-justice enhancement for providing false personal information to Pretrial Services and the Magistrate Judge at the beginning of the case. Herrera asserted that she was responsible only for 100-400 grams of heroin, that her BOL was 26, that she should not receive any role enhancement, and that she should not receive any obstruction-of-justice

enhancement. [DE 234].[3]

In the initial Presentence Report dated August 2, 2002, the Probation Department engaged in a comprehensive analysis of the voluminous evidence and determined that Herrera was responsible for 3-10 kilograms of heroin and that her BOL was 34. [PSR ¶¶ 425-458].[4]  The Probation Department determined that Herrera should not receive any enhancement based on her role in the offense conduct. [PSR ¶ 459].  The Probation Department also concluded that Herrera should receive a two-level, obstruction-of-justice enhancement and that she should not receive any reduction for acceptance of responsibility. [PSR ¶¶ 420-424, 462, 464].  Thus, Probation initially calculated a Total Offense Level ("TOL") of 36, a Criminal History Category ("CHC") of I, and a Guideline Sentencing Range ("GSR") of 188-235 months. [PSR ¶ 528].

Attorney Budreau filed six objections, targeting the Probation Department's determinations of drug weight, obstruction of justice, and acceptance of responsibility. [PSR Addendum].  As to the first calculation, Attorney Budreau was

---

[3]The original plea agreement was filed with the Court.  A copy of the plea agreement was attached to the Presentence Report.

[4]This evidence consisted primarily of multiple controlled purchases of heroin from various workers in the organization (including Hector Alexander Arias), scores of intercepted telephone calls from court-authorized wiretaps, and information received from cooperating witnesses.

unable to persuade the Probation Department to change its views.
[PSR Addendum, Def. Obj. No. 1].[5]  As to the two latter
calculations, however, Attorney Budreau did persuade the
Probation Department to shift its position to conclude that
Herrera should not receive a two-level enhancement for
obstruction of justice and that she should receive a three-level
reduction for acceptance of responsibility.  [PSR Addendum, Def.
Obj. Nos. 2, 3; 9/11/02 TR at 100-01].  Thus, in the final
Presentence Report, dated September 3, 2002, the Probation
Department calculated a BOL of 34, an AOL of 34 (no role
enhancement and no obstruction enhancement), a TOL of 31
(acceptance reduction), and a GSR of 108-135 months. [PSR ¶¶ 425-
465, 528].

     The Court scheduled evidentiary sentencing hearings for
Herrera and 13 co-defendants beginning on September 10, 2002.
Prior to that date, the government provided Attorney Budreau with
notice of the several cooperating witnesses whom it intended to
call at the hearings, including their Giglio information and a
summary of their anticipated testimony.  The government's
position going into the hearings was that it disagreed with
Probation's view on role and obstruction and that Herrera should
receive the three-level enhancement based on her role as a

_____

     [5]Attorney Budreau did convince Probation to subtract a
quantity of heroin attributable to Herrera but the resulting
total still exceeded 3 kilograms [PSR Addendum, Def. Obj. No. 1].

manager or supervisor and a two-level enhancement for obstruction
of justice.

At a status conference on September 7, 2002, the Court
discussed with the parties the various sentencing issues and
encouraged them to continue discussions with a view toward
narrowing and focusing the disputed sentencing issues.  The
government continued to have discussions with Attorney Budreau
about the disputed issues affecting Herrera's sentencing and
ultimately the parties came to an agreement on the disputed
issues.

At the beginning of the hearing on September 10, 2002,
government counsel and Attorney Budreau announced that they had
reached the following agreement which they urged the Court to
accept: Herrera should be held responsible for 1-3 kilograms of
heroin (BOL 32); Herrera should not receive any enhancement based
on her role in the offense conduct; Herrera should not receive an
obstruction-of-justice enhancement; Herrera should receive a two-
level, safety-valve reduction (AOL 30); and Herrera should
receive a three-level, acceptance-of-responsibility reduction
(TOL 27). [9/10/02 TR at 13-14].  The Court then engaged in a
colloquy directly with Herrera, who affirmed that she had read
the Presentence Report and discussed it with Attorney Budreau,
that she was "fully satisfied" with Attorney Budreau's
representation, and that she agreed with the position on drug

weight just enunciated by the government and Attorney Budreau. [9/10/02 TR at 25-28].[6]  The Court concluded that the parties' positions on drug weight and the other issues were reasonably based on the evidence and accepted them. [9/10/02 TR at 27-29; 9/11/02 TR at 99-101].[7]

Based on these positions, the Court calculated a TOL of 27, a CHC of I, and a GSR of 70-87 months. [9/10/05 TR at 27-28].  On September 11, 2002, after again reviewing and affirming the parties' agreement on the disputed issues, the Court imposed a sentence of 87 months' imprisonment, 5 years' supervised release, a $100,000 fine, and a $100 special assessment, observing that Herrera played a "management role" in the conspiracy and that she bore some responsibility for her son, his girlfriend, and everybody else being in federal court facing substantial sentences. [9/11/02 TR at 99-108].[8]  The Judgment was docketed on September 24, 2002. [DE 345].

On September 23, 2002, Attorney Budreau filed a notice of

---

[6]The Court observed that there was "overwhelming evidence" in the Presentence Report that the conspiracy involved over one kilogram of heroin and that this quantity was a "reasonable" approximation of what was foreseeable to Herrera.  9/10/05 TR at 27.

[7]In connection with the role issue, the Court observed that it might have given Herrera a role enhancement because she "played a management role in this scheme." [9/11/02 TR at 107].

[8]Copies of the relevant pages of the transcript of the September 11, 2002 hearing are attached hereto as Exhibit B.

appeal on Herrera's behalf. [DE 369].  In May 2003, the Court of
Appeals allowed Attorney Budreau to withdraw and appointed
Attorney Darla Mondou to represent Herrera.  The sole issue
raised by Herrera on appeal was the legality of the fine imposed
on her.  On May 27, 2004, the Court of Appeals summarily affirmed
the Judgment, holding that there was no plain error." [Appeal No.
02-2298 – May 27, 2004 Judgment].[9]

**Argument**

**A.    Herrera's Claims Must Be Deemed Waived Because They Are
       Devoid Of Any Factual Or Legal Support.**

Herrera's primary claim is that she was denied effective
assistance of counsel at sentencing.  However, the support for
this claim is her conclusory statement that Attorney Boudreau
"did not advise me properly on my sentencing phase," did not
advise her "correctly" on the Guidelines, and that "he did as he
pleased, without taking me into consideration, into what I felt
or how I felt about it."  Def. Petition at 4 (Ground One).  This
is the entire basis for Herrera's claim.  She has not filed an
affidavit or otherwise made any statement specifying what she
wanted Attorney Budreau to do, what he said or did not say in
preparation for the sentencing hearing, whether he explained the

---

[9]A copy of the appellate court's decision is attached hereto
as Exhibit C.  The mandate from the Court of Appeals was docketed
on June 23, 2004. [DE 430].  Herrera filed her current petition
on March 4, 2005.  The petition was timely filed.  *See* 28 U.S.C.
§ 2255, ¶ 6(1).

Sentencing Guidelines to her, and whether he outlined the options available to her. Nor has she provided any legal support to establish that Attorney Budreau's representation, as outlined above, was ineffective under the <u>Strickland</u> standard and that she was somehow prejudiced by his deficient representation. In view of her complete lack of specificity, her claim of ineffective assistance of counsel must be deemed waived. *See* <u>United States v. Bongiorno</u>, 106 F.3d 1027, 1034 (1st Cir. 1997); <u>Pratt v. United States</u>, 129 F.3d 54, 62 (1st Cir. 1997).

**B.   Attorney Budreau Was Not Constitutionally Ineffective At Sentencing.**

Herrera bears the burden of demonstrating, by a preponderance of evidence, not only that she is entitled to relief under §2255 but also that she is entitled to an evidentiary hearing. <u>Barrett v. United States</u>, 965 F.2d 1184, 1186 (1st Cir. 1992); <u>United States v. McGill</u>, 11 F.3d 223, 225 (1st Cir. 1993); <u>Cody v. United States</u>, 249 F.3d 47, 54 (1st Cir. 2001). An evidentiary hearing is unnecessary when a §2255 petition "is inadequate on its face" or, "although facially adequate[,] is conclusively refuted as to the alleged facts by the files and records of the case." <u>McGill</u>, 11 F.3d at 226. *See also* <u>Lema v. United States</u>, 987 F.2d 48, 51 (1st Cir. 1993) (accord); <u>Barrett</u>, 965 F.2d at 1186 (accord). A petitioner is not entitled to relief where his or her allegations "cannot be accepted as true because 'they are contradicted by the record,

9

inherently incredible, or conclusions rather than statements of fact,'" <u>Murchu v. United States</u>, 926 F.2d 50, 57 (1st Cir. 1991)(citation omitted); <u>McGill</u>, 11 F.3d at 226 (accord), or where they "amount to mere 'bald' assertions without sufficiently particular and supportive allegations of fact," <u>Barrett</u>, 965 F.2d at 1186.

> A district court may dismiss a section 2255 petition without holding an evidentiary hearing if it plainly appears on the face of the pleadings that the petitioner is not entitled to the requested relief, or if the allegations, although adequate on their face, consist of no more than conclusory prognostications and perfervid rhetoric, or if the key factual averments on which the petition depends are either inherently improbable or contradicted by established facts of record.

<u>United States v. LaBonte</u>, 70 F.3d 1396, 1412-13 (1st Cir. 1995). The trial judge, moreover, "is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." <u>McGill</u>, 11 F.3d at 225.  *See also* <u>Cohen v. United States</u>, 996 F. Supp. 110, 112 (D. Mass. 1998)(Young, CJ)(a court "may rely on its own recollections of previous events when deciding a motion brought under section 2255"); <u>Norton v. United States</u>, 1997 WL 305222 at *2 (D. Mass. 1997)(Young, CJ) (accord); <u>Indelicato v. United States</u>, 106 F. Supp. 2d 151, 154 (D. Mass. 2000)(Saris, J) (accord).

It is obvious that Herrera cannot prevail on this claim

10

since she explicitly agreed with the positions taken by Attorney
Budreau on September 10, 2002 after having reviewed the
Presentence Report with him.  This Court wisely engaged in a
direct colloquy with Herrera to confirm on the record that she
understood and agreed with Attorney Budreau's statements since
the statements differed somewhat from the positions staked out
earlier in the plea agreement and in dealing with the Probation
Department.  Herrera unhesitatingly and unequivocally agreed with
Attorney Budreau's positions on the Sentencing Guidelines.  Thus,
Herrera is not entitled to vacate her sentence since her
conclusory claim of ineffective assistance is completely refuted
by the record in the criminal case.

In order to prevail under the well-known test enunciated by
the Supreme Court in Strickland v. Washington, 466 U.S. 668
(1984), Herrera must establish (1) that "counsel's performance
was deficient ... that counsel made errors so serious that
counsel was not functioning as the 'counsel' guaranteed the
defendant by the Sixth Amendment" and (2) "that the deficient
performance prejudiced the defense." Id. at 687. *See also*
Bucuvalas v. United States, 98 F.3d 652, 658 (1st Cir.
1996)(observing that a defendant's burden of proving both prongs
of the Strickland test is "heavy").  Under the first prong,
Herrera must demonstrate that Attorney Budreau's representation
"fell below an objective standard of reasonableness." Id. at

11

687-88. *See also* <u>Murchu</u>, 926 F.2d at 58 (accord). Since there is a wide range of professionally competent representation, since there are an infinite number of situations in which counsel must make strategy decisions, and since defendants are often tempted to second-guess counsel's assistance after an adverse result, judicial scrutiny of counsel's performance "must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Id</u>. at 689. *See also* <u>Matthews v. Rakiey</u>, 54 F.3d 908, 916 (1st Cir. 1995)(accord). The First Circuit has emphasized that "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." <u>United States v. Natanel</u>, 938 F.2d 302, 309-10 (1st Cir. 1991). The performance standard "is to be applied not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." <u>Natanel</u>, 938 F.2d at 309. *See also* <u>Lema</u>, 987 F.2d at 51 (observing that habeas court must evaluate the challenged conduct "from counsel's perspective at the time" and must make every effort "to eliminate the distorting effects of hindsight");

Matthews, 54 F.3d at 917 (that counsel's trial strategy "was not ultimately a winning strategy is of no moment in assessing its reasonableness at the time").

> [T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.... Only where a defense decision is completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy, is further review into counsel's competence required.

United States v. Ortiz Oliveras, 717 F.2d 1, 3-4 (1st Cir. 1983). See also Barrett, 965 F.2d at 1193 (habeas petitioner must demonstrate that counsel's error "clearly resulted from neglect or ignorance rather than from informed, professional judgment" and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

It is clear that Attorney Budreau made a professionally sound tactical decision to reach an agreement on drug weight rather than to litigate an issue that he was unlikely to win. This strategy was appropriate for at least three different reasons, all of them beneficial to Herrera. First, Attorney Budreau convinced the Court to accept the estimated drug weight of 1-3 kilograms, rather than to adopt Probation's figure of 3-10 kilograms, thereby causing the BOL to go from 34 down to 32. Second, he convinced the government not to pursue its positions on role in the offense (the validity of which was recognized by

13

the Court) and obstruction of justice and to agree to a safety valve reduction, thereby leading to an AOL of 30.  Third, and perhaps most important, Attorney Budreau's decision to concede the issue of drug weight was sound tactically because there was reliable evidence in the Presentence Report to support not only this quantity but also the Probation Department's calculation of a higher quantity.[10]

---

[10]The wiretap and other evidence revealed that Herrera, who lived with Hector Bienvenido Arias (her "common-law" husband) and near Hector Alexander Arias (her son) was intimately involved with both of these defendants in running the organization, particularly in keeping track of the wholesale quantities of heroin received from various suppliers, in processing and packaging the heroin into retail quantities, and in keeping the financial records of customer debts and amounts owed to suppliers. [PSR ¶¶ 4-5, 8, 12, 13-17, 200-203, 231-232, 236-241, 254-256, 263, 271, 282-289, 322, 331-337, 347-351, 375, 377, 397-398, 410.  Clearly, there was evidence from which the Court could have concluded that, from her vantage point in the conspiracy's center, Herrera was accountable for over 3 kilograms of heroin during the life of the conspiracy. *See, e.g.,* United States v. Sepulveda, 15 F.3d 1161, 1197 (1st Cir. 1993)(drug conspirator "is responsible for drugs he personally handled or anticipated handling, and, under the relevant conduct rubric, for drugs involved in additional acts that were reasonably foreseeable by him and were committed in furtherance of the conspiracy"); United States v. Graciani, 61 F.3d 70, 74 (1st Cir. 1995)("the aggregate amount of attributed drugs is to be derived from the sum total of all relevant conduct"); United States v. Miranda-Santiago, 96 F.3d 517, 524 (1st Cir. 1996)("It is well-settled that defendants in a drug conspiracy are not only responsible for drug quantities which they themselves sold, transported or negotiated; they are also responsible for drug amounts which, from their particular vantage points in the conspiracy, it was reasonably foreseeable would be involved, and which were in fact involved, in the offense."); United States v. Laboy, 351 F.3d 578, 582 (1st Cir. 2003)("a drug dealer who engages in criminal activity with others to further their colective interests may be held liable for the quantities of drugs sold by his partners, if those sales were a reasonably foreseeable consequence of the jointly undertaken

As a result of Attorney Budreau's representation, the GSR as determined by the Court was 70-87 months, less than half of the one originally calculated by the Probation Department.  His tactical decision to concede the drug weight issue, which was but one facet of an overall strategy to reduce Herrera's sentencing exposure as much as possible, was professionally sound and was based on a realistic assessment of the strengths and weaknesses of his client's position.  Had Attorney Budreau decided to litigate the sentencing issues, there was a very real risk that Herrera would been facing a much higher GSR.  Accordingly, Herrera's claim that Attorney Budreau was constitutionally ineffective at sentencing is without merit.

**B.    Herrera's Claim That The Court's Fact Findings Violated The Sixth Amendment Is Not Cognizable Since Booker Is Not Retroactive.**

In her petition, Herrera claims that this Court's factual findings in arriving at the GSR violated the Sixth Amendment because, relying upon the Supreme Court's rulings in <u>Booker</u> and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).  Def. Petition at 4 (Grounds Two and Three).  Since Herrera failed to develop this argument, or to cite any cases in support of it, it must be deemed waived.  <i>See</i> <u>Bongiorno</u>, 106 F.3d at 1034; <u>Pratt</u>, 129 F.3d at 54.   Moreover, this argument has no merit since Herrera

---

actions."); U.S.S.G. § 1B1.3(a)(1)(B) (conspirator is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity").

expressly agreed to drug weight during her colloquy with the
Court on September 10, 2002.  Finally, the law is clear that the
Supreme Court's decision in Booker has not been made
retroactively applicable to cases on collateral review.

Herrera claims, in effect, that Booker gives her a right to
be resentenced to a lower sentence because the jury was not asked
to determine drug weight.  The First Circuit has ruled that
claims such as this are not cognizable in a § 2255 proceeding,
i.e., that Booker is not applicable retroactively to cases that
were final prior to the Booker decision on January 10, 2005.[11]
Cirilo-Munoz v. United States, 404 F.3d 527, 532-33 (1st Cir.
2005).[12]  Every other circuit court of appeals has ruled in the
same fashion.  *E.g.,* United States v. Morris, __ F.3d __, 2005 WL
2950732 (4th Cir. Nov. 7, 2005); Never Misses A Shot v. United
States, 413 F.3d 781, 783-84 (8th Cir. 2005) (per curiam)
(collecting cases); Guzman v. United States, 404 F.3d 139, 141-44
(2nd Cir. 2005).  Further, Herrera's reliance on Blakely does not
assist her since Blakely "are now viewed through the lens of

---

[11]As set forth above, the Court of Appeals ruled against
Herrera on May 27, 2004 and the mandate was docketed in the
clerk's office on June 23, 2004.  Even using the latter date as
the start of the 90-day period within which Herrera could have
filed a petition with the Supreme Court for a writ of certiorari,
it is clear that Herrera's criminal case became final by late
September 2004.

[12]*See also* Sepulveda v. United States, 330 F.3d 55, 61-63
(1st Cir. 2003)(holding that the Supreme Court's decision in
*Apprendi* would not apply retroactively).

[Booker].  Cirilo-Munoz, 404 F.3d at 532.

In Booker, the Court explicitly made its holding applicable to all cases pending on direct review, 125 S.Ct. at 769, but made no explicit statement of retroactivity to collateral cases.  As the First Circuit has observed, "[o]nly in limited circumstances do new rules apply to convictions that have already become final."  Cirilo-Munoz, 404 F.3d at 532.  Under the analysis enunciated by the Supreme Court in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060 (1989)(plurality opinion), a new rule of constitutional law does not apply retroactively to cases on collateral review unless the rule is substantive or a "watershed" rule of procedure "implicating the fundamental fairness and accuracy of the criminal proceeding."  Schriro v. Summerlin, 124 S.Ct. 2519, 2522-23 (2004).  As the First Circuit and other courts have ruled, Booker did not establish a substantive rule. Cirilo-Munoz, 404 F.3d at 532; Guzman, 404 F.3d at 142.  Nor did it establish a watershed rule of procedure since the only change was the degree of flexibility that judges have in applying the guidelines and since judge-made findings at sentencing do not undermine "accuracy" or "fundamental fairness" at sentencing. Cirilo-Munoz, 404 F.3d at 532-33; Guzman, 404 F.3d at142-43.  See also McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005).  Accordingly, Herrera's claim is not cognizable in a § 2255 petition.

## Conclusion

Based on the foregoing reasons, the government respectfully requests that the Court dismiss the § 2255 petition in this case without conducting an evidentiary hearing.

                                        Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

                              By:    /s/Michael J. Pelgro
                                     Michael J. Pelgro
                                     Assistant U.S. Attorney

DATED:    December 5, 2005.

### CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

            Yolanda Herrera
            Inmate No. 23564-038
            FCI Danbury
            Federal Correctional Institution
            Route 37
            Danbury, CT 06811

This 5th day of December 2005.

                                     /s/Michael J. Pelgro
                                    MICHAEL J. PELGRO
                                    ASSISTANT UNITED STATES ATTORNEY

18

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )  CR 01-10056
                               )  Boston, MA
v.                             )  September 10, 2002
                               )
NELSON RUDY TEJEDA, ET AL    )

BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE

APPEARANCES:

(As previously noted.)

JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577



2

INDEX

| WITNESS | DIRECT | CROSS | RD | RC | COURT |
|---|---|---|---|---|---|
| Joevanni Figueroa | 94 | 107 | | | |
| Linna Gonzalez | 116 | 132 | | | |
| Raphael Feliz Guevara | 134 | 139 | | | 139 |
| Awilda Osorio | 140 | | | | |

| EXHIBITS | MARKED | RECEIVED |
|---|---|---|
| 1 | | 113 |
| 2 | | 132 |
| 3 | | 138 |

25

1          MR. MURPHY:  I agree with the court's

2     calculations, your Honor.

3          THE COURT:  Once I make that determination,

4     I'll calculate the Guidelines for Hector A. Arias.

5          MR. MURPHY:  Thank you.

6          THE COURT:  I believe -- has any agreement been

7     reached with regard to Ms. Herrera?

8          MR. PELGRO:  Yes, your Honor.  The parties --

9     the defendant has agreed to the government's figure of

10    one to three kilograms of heroin, putting her at base

11    offense level 32.  The government is not opposing her

12    request for a safety valve reduction.

13          Originally, the government had indicated in the

14    plea agreement that she should get a role enhancement.

15    However, upon reflection, the government thinks

16    Probation has the better analysis of this and is not

17    pressing that.  The government is agreeing to no role

18    enhancement or reduction.  And the government is again

19    dropping its obstruction objection, which brings into

20    play the acceptance reduction.

21          So, essentially, your Honor, there are no

22    further factual issues.  It would be 32 minus 2 minus 3.

23          THE COURT:  27.

24          Mr. Budreau, have you and Ms. Herrera each read

25    the presentence report?

1      MR. BUDREAU:  Absolutely, your Honor.

2      THE COURT:  More precisely, was it read to her

3  in Spanish?

4      MR. BUDREAU:  It was, your Honor, as well as

5  the addendum.

6      THE COURT:  Ms. Herrera, please stand.  Was the

7  presentence report and the objections in the back of it

8  read to you in Spanish?

9      THE DEFENDANT:  Yes.

10     THE COURT:  And other than the original

11  objections, is there anything that you saw in there that

12  you thought was incorrect that might make a difference

13  to sentencing?

14     THE DEFENDANT:  No.

15     THE COURT:  Now, I was just told that you now

16  agree that you should be held responsible for one to

17  three kilograms of heroin rather than 100 to 400 grams

18  as --

19     THE DEFENDANT:  Yes.

20     THE COURT:  And, also, rather than the 3,146

21  grams found by Probation, which would have raised your

22  sentence if it was proven, you agree to one to 300, is

23  that right -- I'm sorry, one to three kilograms -- is

24  that correct?

25     THE DEFENDANT:  Ah hah.

1          THE COURT:  You have to say yes or no.

2          THE DEFENDANT:  Yes.

3          THE COURT:  Did you discuss with Mr. Budreau

4    whether you wanted to make that agreement and give up

5    your objection claiming one to 400 grams?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Are you fully satisfied with his

8    work as your lawyer in this case?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Once again, I'm going to accept

11   that agreement.  I think there is, from what I saw,

12   overwhelming evidence that there's at least one to three

13   kilograms involved.  The real question is whether the

14   defendant would be held responsible for more than three

15   kilograms as recommended by Probation.  But it's only

16   another 146 or 147 grams.  Some reasonable

17   approximations are permissible.  This was the result of

18   reasonable arm's length negotiations, and I will accept

19   -- I will accept that.

20         The Guidelines then, I believe, as Mr. Pelgro

21   just said, give us a total offense level of 27, which

22   means the range of imprisonment is 70 to 87 months,

23   because the criminal history category is 1.

24         I guess we have the same issue of whether it's

25   36 or 60 months supervised release.

1          What is the fine range?  I'll ask Probation

2     officer to identify herself for the record.

3          FROM THE FLOOR:  Jennifer Sinclair.  12,500 to

4     one million at a level 27.

5          THE COURT:  12,500 to one million is the fine

6     range, and a $100 special assessment.

7          Do counsel agree that those are the Guideline

8     ranges?

9          MR. PELGRO:  Yes, your Honor.

10          MR. BUDREAU:  Yes, your Honor.

11          THE COURT:  You may be seated.

12          MR. BUDREAU:  Thank you, your Honor.

13          THE COURT:  Has any agreement been reached with

14     regard to Ms. Gonzalez?  Actually, maybe we ought to

15     wait until Mr. Dilday arrives.

16          MR. PELGRO:  I was just going to say that it's

17     pretty much as set forth in the chart.  There weren't

18     any disagreements.

19          THE COURT:  There were no disagreements?

20          MR. PELGRO:  There's just one issue, your

21     Honor, that relates to the safety valve.  As indicated

22     earlier, the government believes that Ms. Gonzalez has

23     met the fifth criterion of the proffer.  However, there

24     is an issue concerning criminal history as to whether or

25     not she has more than one point, and that's all stated

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA        )   CR 01-10056
                                        )   Boston, MA

v.                                )   September 11, 2002
                                          )

NELSON RUDY TEJEDA, ET AL      )


BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE


APPEARANCES:

(As previously noted.)


JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577



EXHIBIT
B
Herrera

USDC, MA
Wolf, J.

# MANDATE

# United States Court of Appeals
## For the First Circuit

---

No. 02-2298

UNITED STATES,

Appellee,

v.

YOLANDA HERRERA,

Defendant, Appellant.

---

Before

Boudin, <u>Chief Judge</u>,
Lipez and Howard, <u>Circuit Judges</u>.

---

JUDGMENT
Entered:  May 27, 2004

We review for plain error, in light of appellant's concession that she did not object below to the fine imposed by the district court.

Appellant has addressed only one of the four components of the plain error test.  <u>See</u> <u>United States</u> v. <u>Rowe</u>, 268 F.3d 34, 38 (1st Cir. 2001).  Our review of the record below shows that it is adequate for appellate review and that there is no plain error. <u>See</u>  <u>United States</u> v. <u>Lujan</u>, 324 F.3d 27, 35 (1st Cir. 2003).

The judgment is <u>affirmed</u>. 1st Cir. R. 27(c).

Certified and Issued as Mandate
under Fed. R. App. P. 41.

By the Court:

Richard Cushing Donovan, Clerk

Richard Cushing Donovan, Clerk.

Deputy Clerk

By: **JULIE GREGG**

Date: 6/17/04

Appeals Attorney

[cc: Dina Chaitowitz, AUSA, Virginia Vander Jagt, AUSA,
Darla Jean Mondou, Esq.]

EXHIBIT
C
Herrera