UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

YOLANDA HERRERA,                )
            Petitioner          )     CIVIL ACTION NO. 05-10441-MLW
                                )
        v.                      )
                                )
UNITED STATES OF AMERICA,       )
            Respondent          )
                                )

**Government's Motion To Substitute
Exhibits In Support Of Its Memorandum**

The United States of America, by Michael J. Sullivan, United States Attorney, and Michael J. Pelgro, Assistant U.S. Attorney, hereby files this motion to substitute exhibits in support of its memorandum in opposition to the petitioner's motion under 28 U.S.C. § 2255.  The government requests that the Court consider the three exhibits attached to this motion instead of the three exhibits attached to the government's memorandum.

In support of this motion, the government states that, on December 5, 2005, it filed its memorandum in opposition to the petitioner's motion under 28 U.S.C. § 2255.  The government attached to the memorandum three exhibits from the underlying criminal case.  Certain exhibits, however, did not scan properly so that only the first page of the proposed exhibit was filed. The government has re-scanned the exhibits in their entirety.

The government therefore respectfully requests that the Court allow this motion to substitute the three exhibits attached to this motion instead of the three exhibits attached to the previously-filed memorandum.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/Michael J. Pelgro
       Michael J. Pelgro
       Assistant U.S. Attorney

DATED:    December 7, 2005.

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

        Yolanda Herrera
        Inmate No. 23564-038
        FCI Danbury
        Federal Correctional Institution
        Route 37
        Danbury, CT 06811

This 7th day of December 2005.

     /s/Michael J. Pelgro
    MICHAEL J. PELGRO
    ASSISTANT UNITED STATES ATTORNEY

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA          )   CR 01-10056
                                  )   Boston, MA
v.                                )   September 10, 2002
                                  )
NELSON RUDY TEJEDA, ET AL         )



BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE


APPEARANCES:


(As previously noted.)




JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577



2

INDEX

| WITNESS | DIRECT | CROSS | RD | RC | COURT |
|---|---|---|---|---|---|
| Joevanni Figueroa | 94 | 107 | | | |
| Linna Gonzalez | 116 | 132 | | | |
| Raphael Feliz Guevara | 134 | 139 | | | 139 |
| Awilda Osorio | 140 | | | | |

| EXHIBITS | MARKED | RECEIVED |
|---|---|---|
| 1 | | 113 |
| 2 | | 132 |
| 3 | | 138 |

1          MR. MURPHY:  I agree with the court's

2     calculations, your Honor.

3          THE COURT:  Once I make that determination,

4     I'll calculate the Guidelines for Hector A. Arias.

5          MR. MURPHY:  Thank you.

6          THE COURT:  I believe -- has any agreement been

7     reached with regard to Ms. Herrera?

8          MR. PELGRO:  Yes, your Honor.  The parties --

9     the defendant has agreed to the government's figure of

10    one to three kilograms of heroin, putting her at base

11    offense level 32.  The government is not opposing her

12    request for a safety valve reduction.

13         Originally, the government had indicated in the

14    plea agreement that she should get a role enhancement.

15    However, upon reflection, the government thinks

16    Probation has the better analysis of this and is not

17    pressing that.  The government is agreeing to no role

18    enhancement or reduction.  And the government is again

19    dropping its obstruction objection, which brings into

20    play the acceptance reduction.

21         So, essentially, your Honor, there are no

22    further factual issues.  It would be 32 minus 2 minus 3.

23         THE COURT:  27.

24         Mr. Budreau, have you and Ms. Herrera each read

25    the presentence report?

26

1            MR. BUDREAU:  Absolutely, your Honor.

2            THE COURT:  More precisely, was it read to her

3       in Spanish?

4            MR. BUDREAU:  It was, your Honor, as well as

5       the addendum.

6            THE COURT:  Ms. Herrera, please stand.  Was the

7       presentence report and the objections in the back of it

8       read to you in Spanish?

9            THE DEFENDANT:  Yes.

10            THE COURT:  And other than the original

11       objections, is there anything that you saw in there that

12       you thought was incorrect that might make a difference

13       to sentencing?

14            THE DEFENDANT:  No.

15            THE COURT:  Now, I was just told that you now

16       agree that you should be held responsible for one to

17       three kilograms of heroin rather than 100 to 400 grams

18       as --

19            THE DEFENDANT:  Yes.

20            THE COURT:  And, also, rather than the 3,146

21       grams found by Probation, which would have raised your

22       sentence if it was proven, you agree to one to 300, is

23       that right -- I'm sorry, one to three kilograms -- is

24       that correct?

25            THE DEFENDANT:  Ah hah.

27

1          THE COURT:  You have to say yes or no.

2          THE DEFENDANT:  Yes.

3          THE COURT:  Did you discuss with Mr. Budreau

4    whether you wanted to make that agreement and give up

5    your objection claiming one to 400 grams?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Are you fully satisfied with his

8    work as your lawyer in this case?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Once again, I'm going to accept

11   that agreement.  I think there is, from what I saw,

12   overwhelming evidence that there's at least one to three

13   kilograms involved.  The real question is whether the

14   defendant would be held responsible for more than three

15   kilograms as recommended by Probation.  But it's only

16   another 146 or 147 grams.  Some reasonable

17   approximations are permissible.  This was the result of

18   reasonable arm's length negotiations, and I will accept

19   -- I will accept that.

20          The Guidelines then, I believe, as Mr. Pelgro

21   just said, give us a total offense level of 27, which

22   means the range of imprisonment is 70 to 87 months,

23   because the criminal history category is 1.

24          I guess we have the same issue of whether it's

25   36 or 60 months supervised release.

28

1          What is the fine range?  I'll ask Probation

2     officer to identify herself for the record.

3          FROM THE FLOOR:  Jennifer Sinclair.  12,500 to

4     one million at a level 27.

5          THE COURT:  12,500 to one million is the fine

6     range, and a $100 special assessment.

7          Do counsel agree that those are the Guideline

8     ranges?

9          MR. PELGRO:  Yes, your Honor.

10         MR. BUDREAU:  Yes, your Honor.

11         THE COURT:  You may be seated.

12         MR. BUDREAU:  Thank you, your Honor.

13         THE COURT:  Has any agreement been reached with

14    regard to Ms. Gonzalez?  Actually, maybe we ought to

15    wait until Mr. Dilday arrives.

16         MR. PELGRO:  I was just going to say that it's

17    pretty much as set forth in the chart.  There weren't

18    any disagreements.

19         THE COURT:  There were no disagreements?

20         MR. PELGRO:  There's just one issue, your

21    Honor, that relates to the safety valve.  As indicated

22    earlier, the government believes that Ms. Gonzalez has

23    met the fifth criterion of the proffer.  However, there

24    is an issue concerning criminal history as to whether or

25    not she has more than one point, and that's all stated

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA          )   CR 01-10056
                                  )   Boston, MA
v.                                )   September 11, 2002
                                  )
NELSON RUDY TEJEDA, ET AL         )


BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE


APPEARANCES:

(As previously noted.)


JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577



2

INDEX

| WITNESS | DIRECT | CROSS | RD | RC | COURT |
|---------|--------|-------|-----|-----|-------|
| Jose Cruz | 58 | | | | |

| EXHIBITS | MARKED | RECEIVED |
|----------|--------|----------|
| 13 | | 30 |
| 14 | | 33 |

99

1    there and tell everybody what a miserable experience you

2    had, maybe the rest of your life will be happier than

3    your life to date.

4          If you don't learn anything from this,

5    including there are times when it doesn't make sense to

6    obey your parents when they're encouraging you to break

7    the law, you're going to spend the rest of your life in

8    prison.

9          You may be seated.

10         Next we go to Ms. Herrera.

11         If I understand it correctly, there are no

12   remaining disputes concerning Ms. Herrera.  The parties

13   are in agreement, and I've accepted the agreement that

14   this involves one to three kilograms of cocaine.  Safety

15   valve has been satisfied.  The government has withdrawn

16   its objection concerning obstruction of justice, and

17   there's a three level reduction for acceptance of

18   responsibility.

19         MR. PELGRO:  That's correct, your Honor.

20   However, I think you said cocaine.

21         THE COURT:  I'm sorry, I meant heroin.

22         MR. PELGRO:  That's correct.

23         THE COURT:  Let's look at the objections so I

24   can make the proper endorsements.

25         The first objection is accommodated in the plea

1    agreement concerning acceptance of responsibility.

2            The second objection regarding weight, the

3    government says should be 1,000 to 3,000 grams.  That's

4    allowed.

5            The third objection is taken care of by the

6    earlier rulings.  So is the fourth, I believe.

7            Is that all correct, Mr. Pelgro?

8            MR. PELGRO:  Yes, your Honor.

9            THE COURT:  With regard to the first of the

10    defendant's objections, am I correct, Mr. Budreau, that

11    the defendant now agrees, as I was told previously, that

12    the proper amount is one to 3,000 grams.

13            MR. BUDREAU:  That's correct, your Honor.  I

14    think page 9 is the second objection.

15            THE COURT:  Objection 2, with the agreement of

16    the government, is allowed.  That relates to

17    obstruction.

18            MR. BUDREAU:  Page 12 is the third objection.

19            THE COURT:  The third objection concerning

20    acceptance of responsibility is also allowed.

21            Objection 4, I think, requires a ruling, is

22    that right?

23            MR. BUDREAU:  Correct.

24            THE COURT:  Objection 5, I think, requires no

25    ruling.

1      And 6 appears to be the same, is that right?

2      MR. BUDREAU:  That's right, your Honor.

3      THE COURT:  All right.  In view of all of that,

4  as I understand it, the total offense level is 27,

5  criminal history category is 1, Guidelines are 70 to 87

6  months, 60 months supervised release, a fine range of

7  12,500 to $1 million, and a $100 special assessment.

8      Do the parties agree?

9      MR. BUDREAU:  Yes, we do.

10      MR. PELGRO:  Yes, your Honor.

11      THE COURT:  What is the government's

12  recommendation and what are the reasons for it?

13      MR. PELGRO:  Your Honor, the government is

14  recommending a sentence of 87 months incarceration, five

15  years supervised release, and I'll leave the issue of

16  the fine to the court's discretion, and a special

17  assessment.

18      The reason, your Honor, is as follows.  This

19  defendant, although not as out front as her -- as the

20  two men in her life, played a vitally important role to

21  the success of the conspiracy, and I would point your

22  Honor's attention to two groups of evidence.  The

23  wiretap evidence really is what made the case against

24  this particular defendant, and what it showed was daily

25  contact between Ms. Herrera and Mr. Hector B. Arias and

1    Ms. Herrera and Hector A. Arias.  In fact, she was often

2    the intermediary between those two strong-willed

3    persons.  But what her job really was, as Linna Gonzalez

4    testified, was keeping track of how much product they

5    had on hand, how much they had mixed this to make the

6    distributor quantities of heroin, how much money they

7    had on hand, and how much they were going to need to pay

8    the supplier for the next quantity of heroin.

9        That came through loud and clear on the wiretap

10   evidence, as set forth in the presentence report, that

11   she was the person who was the bookkeeper, if you will,

12   the financial recordkeeper, the person that made sure

13   this was a profitable venture, and they weren't losing

14   money instead of making money.

15       Again, the only other piece of evidence, your

16   Honor, would be Ms. Gonzalez's testimony that in

17   addition to that she -- in addition to those roles --

18   and Mrs. Gonzalez testified that Ms. Herrera was the

19   person who would keep track of everything in notebooks,

20   would issue out the money, make sure everyone was

21   getting the correct money, but she would -- she was also

22   the person who would help in preparing the heroin for

23   distribution.  She would bag it.  She would get some of

24   the things needed to bag the heroin.

25       So, to the government's way of thinking, that

1    was a vitally important role to the success of the

2    conspiracy.

3              I would add, your Honor, like the other persons

4    in this conspiracy, she has no drug issues.  She's not a

5    heroin addict.  This is purely a profit venture for her.

6              She entered the country illegally.  She was

7    living in section 8 housing.  She allowed her husband to

8    live there illegally.  She was using a fake ID, fake

9    Social Security number.  All of those things, your

10   Honor, with regard to the other defendants, equally

11   apply to this defendant.  And, essentially, that would

12   be the reason, your Honor.

13             MR. BUDREAU:  Your Honor, James Budreau on

14   behalf of Ms. Herrera.  Ms. Herrera did come to the

15   country in 1991.  Prior to that, she lived in the

16   Dominican Republic, like her husband, but she had lived

17   in pretty much what we would call abject poverty.  She

18   had lost her family home, as well as some properties, as

19   a result of her brother, who had lost some money in some

20   situation.  But she lived in abject poverty.  She had

21   three children -- has three children in the Dominican

22   Republic.  She's 47 years old.  She lived in

23   Massachusetts.  She did work while she was in

24   Massachusetts.  She worked as a seamstress, and she

25   worked for a flower factory.  She's a person who did put

1    her hands to the grindstone in that respect in

2    Massachusetts while she was here.  She did get involved.

3    She obviously has accepted responsibility for that.

4        I think the evidence, to some degree,

5    demonstrates the control that her husband had over the

6    family and that she is also one of those people.  She

7    accepts complete responsibility for what she did, as Mr.

8    Pelgro outlined.  But I do think that it's pretty

9    evident, this was not a house of feminism.  This is a

10   house where Boogie ruled the ruse.  She was a cog in the

11   machine.  No question about it, she did some awful

12   things, no question about it.

13       I think there's one thing that distinguishes

14   her from the rest of the family beyond the evidence that

15   we have discussed and, that is, she did do a safety

16   valve proffer, and I think that's important for a couple

17   of reasons.  One is she stood up and said, I did wrong,

18   and this is what I did.  And she's a person who had the

19   force to point the finger at her common law husband and

20   say things about him, as well as her son.  Those are

21   tremendously difficult things for anybody to do,

22   especially since she had been in the shadow of her

23   common law husband and, as the report shows, the PSR

24   shows, he was a relatively abusive person, not only to

25   her son, but to her.  And while she didn't cower in the

1   corner, and this is not one of any PTSD or anything like

2   that, it does demonstrate that this man had a lot of

3   power over her.  When she was out of the shadow, she

4   stood up and said, I take responsibility, and said, this

5   is what everybody did in this organization.  While she

6   didn't testify against anyone, that still does not mean

7   she didn't take that sort of step and didn't take

8   herself out of the shadow of her husband.  It shows

9   she's going to change her ways and be a different person

10   when she is released and goes back to her children in

11   the Dominican Republic.

12          I would ask the court to consider all that and

13   ask the court to give her a sentence at the low end of

14   the Guidelines, which would be 70 months.

15          Thank you.

16          THE COURT:  Ms. Herrera, you have an

17   opportunity to speak before I decide what sentence to

18   impose.  You do not have to say anything if you don't

19   want to.  But if there's anything you would like to say,

20   this is the time.

21          THE DEFENDANT:  First of all, I want to

22   apologize to you and to the government of the United

23   States and to God.  I have already asked God for

24   forgiveness, because I am sorry.  And that's all.  Thank

25   you.

106

1        (Short pause.)

2        THE COURT:  Ms. Herrera, please stand.

3        In connection with the one count to which

4    you've pled guilty, I hereby sentence you to serve 87

5    months in the custody of the Attorney General of the

6    United States, to be followed by 60 months of supervised

7    release on the standard conditions and on the additional

8    conditions that you pay a hundred thousand dollar fine,

9    that you not possess a firearm or other dangerous

10    weapon, and that if ordered deported you leave

11    immediately and not return without the authorization of

12    the Attorney General.

13        You have a limited right to appeal.  You gave

14    up some of your rights to appeal in your presentence

15    report.  I believe you still retain whatever rights you

16    would ordinarily -- well, you have the right to appeal

17    in the plea agreement.  You may have given up your right

18    to appeal the decisions I've made.  But, in any event,

19    if you want to appeal, you should assume you have the

20    right to appeal.  Notice of appeal has to be filed

21    within ten days of the entry of judgment.  If you'd like

22    to try to pursue an appeal within the limits left to you

23    by the plea agreement, but do not have the money to

24    afford a lawyer, one will be appointed for you at public

25    expense.

1          Fundamentally, the reasons for this decision

2    are as follows.  87 months is at the high end of what is

3    said to be the reasonable range, but nobody asked that

4    you get an upward adjustment like your common law

5    husband and your son for your role in the offense and,

6    if I had been asked, I might have granted it, because

7    you played a management role in this scheme.

8          You bear a responsibility to your son being

9    here and -- some responsibility for your son being here,

10   for Ms. Gonzalez being here, for everybody else being

11   here.  And it is good that you made that safety valve

12   proffer, but you got a two level reduction in your

13   Guidelines for doing that.

14         But, fundamentally, you know, you're a person

15   like Boogie who was able to do honest work in the

16   Dominican Republic and here.  You are a seamstress.  You

17   worked in a flower shop.  But you decided or at least

18   agreed to do heroin instead.  And it has a horrible

19   effect on people.  If you didn't know that before, you

20   certainly should understand it, having sat here the last

21   three days.  And, you know, you came to this country

22   illegally.  You were given subsidized housing, paid for

23   in part by the government of the United States.  And

24   instead of taking advantage of the opportunity you

25   legally obtained to do honest work, you did dishonest,

108

1    dangerous work.

2          Now you have -- frankly, the way the sentencing

3    laws work at the moment, I don't have the power to give

4    you a sentence that's as high as Andy's, but it's hard

5    for me to explain why you're not going to prison at

6    least as long as him.  But you're not.

7          So you're likely to be the first one sent back

8    to the Dominican Republic.  And if this has been a

9    miserable experience for you, I hope you'll tell

10   everybody you meet so they won't be tempted to come

11   here, try to do the same thing, and have the same

12   miserable experience.

13         You may be seated.

14         MR. BUDREAU:  Your Honor, if I might ask, I

15   don't know if it's an appropriate request for counsel

16   for the Ariases to leave at this point.  If it's not,

17   certainly, we'll --

18         THE COURT:  We're going to break for lunch

19   shortly.

20         MR. BUDREAU:  Fine, your Honor.

21         THE COURT:  That's one of the issues we'll have

22   to discuss.

23         Who is it -- Mr. Cullen made arrangements not

24   to have to be anyplace else this afternoon.  Who else?

25         MR. PALMER:  Attorney Palmer for Mr. Ortiz.  I

**MANDATE**

*USDC, MA*
*Wolf, J.*

# United States Court of Appeals
## For the First Circuit

No. 02-2298

UNITED STATES,

Appellee,

v.

YOLANDA HERRERA,

Defendant, Appellant.

Before

Boudin, <u>Chief Judge</u>,
Lipez and Howard, <u>Circuit Judges</u>.

JUDGMENT
Entered:  May 27, 2004

　　　We review for plain error, in light of appellant's concession that she did not object below to the fine imposed by the district court.

　　　Appellant has addressed only one of the four components of the plain error test.  <u>See</u> <u>United States</u> v. <u>Rowe</u>, 268 F.3d 34, 38 (1st Cir. 2001).  Our review of the record below shows that it is adequate for appellate review and that there is no plain error. <u>See</u>  <u>United States</u> v. <u>Lujan</u>, 324 F.3d 27, 35 (1st Cir. 2003).

　　　The judgment is <u>affirmed</u>. 1st Cir. R. 27(c).

Certified and Issued as Mandate
under Fed. R. App. P. 41.

By the Court:

Richard Cushing Donovan, Clerk

Richard Cushing Donovan, Clerk.

Deputy Clerk

Date:  6/17/04

By: _____
**JULIE GREGG**
Appeals Attorney

[cc: Dina Chaitowitz, AUSA, Virginia Vander Jagt, AUSA,
Darla Jean Mondou, Esq.]

